

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-1997

# Kralik v. Durbin

Precedential or Non-Precedential:

Docket 97-3089,97-3106

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Kralik v. Durbin" (1997). *1997 Decisions.* Paper 273.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/273

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 12, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-3089 and 97-3106

KAREN KRALIK,

       Appellant in No. 97-3089

v.

JOHN DURBIN, in his capacity as Executive Director,

Pennsylvania Turnpike Commission

KAREN KRALIK,

v.

JOHN DURBIN, in his capacity as Executive Director,

Pennsylvania Turnpike Commission,

       Appellant in No. 97-3106

On Appeal from the United States District Court

for the Western District of Pennsylvania
(D.C. Civ. No. 95-01877)

Argued October 21, 1997

BEFORE: MANSMANN, GREENBERG, and

ALARCON,* Circuit Judges

(Filed: December 12, 1997)
_____

*Honorable Arthur L. Alarcon, Senior Judge of the United States Court
of Appeals for the Ninth Circuit, sitting by designation.

          Pamela E. Berger (argued)
          312 Boulevard of the Allies
          Pittsburgh, PA 15222

          Attorney for Appellant-Cross
          Appellee Karen Kralik

          James B. Brown (argued)
          Jeffrey A. Van Doren
          Cohen & Grigsby
          625 Liberty Avenue
          2900 CNG Tower
          Pittsburgh, PA 15222-3115

          Attorneys for Appellee-Cross
          Appellant John Durbin

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

Karen Kralik appeals from the district court's December 16, 1996 order entering summary judgment against her under the Rehabilitation Act, 29 U.S.C. S 701 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. S 12101 et seq., and from the district court's January 14, 1997 order denying her motion for reconsideration. The appellee, John Durbin, cross appeals from the portion of the December 16, 1996 order denying summary judgment as to one issue even though the order dismissed Kralik's complaint. We will affirm the orders granting summary judgment and denying the motion for reconsideration and will dismiss the cross appeal.

Kralik alleged in her complaint that she is an individual with a disability employed as a toll collector by the Pennsylvania Turnpike Commission, an instrumentality of the Commonwealth of Pennsylvania, at its Allegheny Valley Interchange. Durbin is Executive Director of the

2

Commission so as a matter of convenience and reality we will refer to him as the "Commission." Kralik asserted that she suffered a back injury in an automobile accident unrelated to her work. She further asserted that she sought from the Commission the reasonable accommodation of being relieved from forced overtime "as she cannot work for more than eight hours at a time" because of her injuries. The Commission, however, refused to grant the accommodation except on a temporary basis. After the Commission filed an answer, it moved for summary judgment on the grounds that Kralik is not a qualified individual with a disability and that, in any event, the Commission is not obligated to make the requested accommodation.[1]

In its opinion dated December 13, 1996, the district court noted that Kralik had worked for the Commission since 1988 as a toll collector and in 1990 had become a permanent Commission employee at the Allegheny Valley Interchange. Kralik was in a bargaining unit represented by Teamsters Local Union No. 250. At all relevant times the union was a party to a collective bargaining agreement with the Commission which included the following overtime provision:

> Section 11. In a twenty-four (24) hour operation, if the Commission experiences difficulty in obtaining a replacement for any work shift, they will call employees using the seniority system described herein. If no employee accepts the assignment, it shall be offered by seniority to employees at the work site. In the event they refuse, the least senior employee, including any temporary employees in the needed job classifications, shall remain as the replacement. A temporary employee shall not be permitted to work overtime when a full-time employee is ready, willing and able to perform the overtime work in question. Temporary Toll Collectors who are scheduled to work forty (40) hours or who

_____

1. It also urged that Kralik failed to exhaust the remedies provided in the collective bargaining agreement between her union, Teamsters Local Union No. 250, and the Commission, but that issue is no longer in the case so we make no further reference to it.

3

have already worked forty (40) hours in a given work week are not to be asked to work a vacant shift unless all the Temporary Toll Collectors who are not scheduled to work nor have worked forty (40) hours and all the permanent Toll Collectors have refused to work the vacant shift. All hours worked by a Temporary Toll Collector will be counted towards the forty (40) hours requirement except those hours worked which were first offered to and refused by all eligible permanent Toll Collectors.

Scheduled work time must be adjusted to comply with the above.

A. Consistent with Article IX, in the event that overtime opportunities are refused by all employees, the overtime shift shall be assigned to the employee currently working with the least amount of seniority. This will be known as a `forced overtime assignment'.

The court observed that after two medical leaves of absence due to her back injury, Kralik on November 7, 1994, submitted a "Reasonable Accommodation Form" to the Commission requesting exemption from forced overtime requirements. Kralik subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC") asserting that the Turnpike Commission had violated the ADA in not making an accommodation and that the union, Kralik, and the Commission later had entered into an agreement temporarily excusing her from being forced to work overtime. Then, as the court noted, she filed this action seeking relief under both the ADA and section 504 of the Rehabilitation Act, 29 U.S.C. S 794.

The court, citing Helen L. v. DiDario, 46 F.3d 325, 331 (3d Cir.), cert. denied, 116 S.Ct. 64 (1995), held that the similarities between the two statutes permit a joint analysis of Kralik's claims.2 The court then explained:

_____

2. As noted in Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1514-15 (2d Cir. 1995), "[t]he Rehabilitation Act . . . prohibits disability-based discrimination by government agencies and other recipients of federal funds . . . ." The ADA has a broader scope as it defines a "covered entity"
as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. S 12111(2). Certain employers, however, are not included within section 12111(2). See 42 U.S.C. S 12111(5).

> [U]nder either the ADA or the Rehabilitation Act, a
> plaintiff can state a claim for discrimination based
> upon her employer's failure to accommodate her
> handicap by alleging facts showing (1) that the
> employer is subject to the statute under which the
> claim is brought, (2) that she is an individual with a
> disability within the meaning of the statute in question,
> (3) that, with or without reasonable accommodation,
> she could perform the essential functions of the job,
> and (4) that the employer had notice of the plaintiff's
> disability and failed to provide such accommodation.

Slip op. at 6 (quoting Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1515 (2d Cir. 1995)). For purposes of its summary judgment motion, the Commission agreed that it was subject to both the ADA and the Rehabilitation Act and had notice of Kralik's alleged disability, yet sought summary judgment on the grounds that Kralik was not a qualified individual with a disability and could not, with or without reasonable accommodation, perform the essential functions of the job as a toll collector.

As the court noted, both the ADA and the Rehabilitation Act define "disability" as a "physical or mental impairment that substantially limits" one or more of the major life activities of the individual claiming to have a disability. 42 U.S.C. S 12102(2); 29 U.S.C. S 706(26). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working," 29 C.F.R. S 1630.2(i), as well as "sitting, standing, lifting [and] reaching." 29 C.F.R. S 1630 app.

After analyzing the record the court concluded as follows: (1) Kralik did not produce evidence that her ability to work, to engage in the major life activities of caring for herself or her house, to travel or engage in leisure activities, or to twist had been substantially impaired; but (2) there was a genuine dispute of fact as to whether Kralik's ability to sit, stand, and stoop had been impaired. Thus, the court denied the Commission's motion for summary judgment on the issue of whether Kralik was a qualified individual with a disability.

The court next considered the Commission's alternate contention that Kralik's claim could not succeed because the requested accommodation, exemption from the forced overtime provision, was not reasonable. In this regard the Commission pointed out that such an exemption could require the Commission to compel an employee with more seniority than Kralik to work overtime, forcing the Commission to infringe another employee's seniority rights under the collective bargaining agreement.

The court cited various cases under the Rehabilitation Act and the ADA supporting a conclusion that a measure that violates a seniority system established in a collective bargaining agreement is not a "reasonable accommodation," and thus is not required by the ADA. See Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1052 (7th Cir. 1996) (discussed below), cert. denied, 117 S.Ct. 1318 (1997); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114 (8th Cir. 1995) ("The ADA does not require that Northwest take action inconsistent with the contractual rights of other workers under a collective bargaining agreement."); Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995) ("An employer is not required to make accommodations that would violate the rights of other employees. Farmland Foods had no obligation to terminate other employees or violate a collective bargaining agreement in order to accommodate Wooten, even if it perceived him to have a substantial impairment.") (citation omitted); Milton v. Scrivner, Inc., 53 F.3d 1118, 1124–25 (10th Cir. 1995) ("An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job. An accommodation that would result in other employees having to work[ ] harder or longer hours is not required.") (citations omitted); Shea v. Tisch, 870 F.2d 786, 790 (1st Cir. 1989) ("Consequently, we . . . conclude that the postal service was not required to accommodate plaintiff further by placing him in a different position since to do so would violate the rights of other employees under the collective bargaining agreement."); Carter v. Tisch, 822 F.2d 465, 467 (4th Cir. 1987) ("Reassigning Carter to permanent light duty, when he was not entitled to one of a limited number of light duty positions, might have interfered with the rights

6

of other employees under the collective bargaining agreement.").

The court found that Kralik's requested accommodation would infringe upon the legitimate seniority rights of other employees established in the collective bargaining agreement. The court then, for the very reason that the accommodation was temporary, rejected Kralik's contention that the temporary agreement described above amounted to a concession that the requested accommodation is reasonable. See Shea, 870 F.2d at 789 & n.4 (holding that employer was not required to institute permanent accommodation that would violate rights under collective bargaining agreement despite employer's ability to maintain accommodation temporarily without compromising other employees' rights). Thus, the court concluded that "regardless of Kralik's ability to establish that one or more of her major life activities were substantially limited, the requested accommodation is not reasonable, in that it would require the Commission to violate the seniority rights of other employees as set forth in the collective bargaining agreement." Consequently, the court granted the Commission summary judgment.

Subsequently, Kralik moved for reconsideration contending, as she explains in her brief, that there was "an agreement between the Teamsters and the . . . Commission regarding the accommodation of another fare collector [which] permits assigning [the collector] to a shift independently of the bidding process required by the collective bargaining agreement." Br. at 5. The documentation attached to Kralik's motion included a letter from the union to the Commission stating that as long as the other collector's request is covered by and was reasonable under the ADA, the union would not object to the assignment of that collector and "will process no grievances concerning this matter." App. at 93. The district court denied the motion for reconsideration as Kralik did not explain why she had not produced this evidence earlier.3
_____

3. The court also indicated in denying the motion for reconsideration that Kralik "neither relied on the EEOC amicus brief in her earlier brief nor mentioned that the 7th Circuit rejected the argument therein." We are uncertain why Kralik's failure to rely on the EEOC brief was germane to the motion but we believe that the reference to the Court of Appeals for the Seventh Circuit probably was to Eckles, 94 F.3d at 1050-52, which we cite above and discuss at great length below.

Kralik then appealed and the Commission cross appealed. The district court had jurisdiction under 28 U.S.C. SS 1331 and 1343 and we have jurisdiction under 28 U.S.C. S 1291. We exercise plenary review over the order granting summary judgment but will review the order denying reconsideration on an abuse of discretion basis.

II. DISCUSSION

A. The appeal

Preliminarily we point out that Kralik does not question the district court's joint analysis of her ADA and Rehabilitation Act claims. Thus, she does not contend that she might be entitled to relief under one act but not the other. Consequently, while we will focus our analysis primarily on the ADA, our analysis in this case applies equally to her Rehabilitation Act claim. The ADA provides that prohibited discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. S 12112(b)(5)(A). Inasmuch as the district court held that there was a material dispute of fact as to whether she was a qualified individual with a disability, Kralik primarily challenges the district court's determination that the Commission did not discriminate against her in violation of the ADA by failing to exempt her from the forced overtime provisions of her union's collective bargaining agreement.

In urging us to reverse she points to 42 U.S.C. S 12112(b)(2), an ADA provision which provides that discrimination includes a covered entity's:

> participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs).

8

She then argues that under both the Rehabilitation Act, as amended in 1991, and the ADA, an employer should consider making an accommodation by reassigning an employee. See Br. at 9 (citing Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996)). She further contends that the Commission's adherence to the forced overtime provision in the collective bargaining agreement violates the plain language of 42 U.S.C. S 12112(b)(2), and thus of the Rehabilitation Act, and that the legislative history of the ADA supports her position by establishing that an " `entity may not do through a contractual provision what it may not do directly . . . .' " Br. at 10 (quoting H.R. Rep. No. 485(II) 101st Cong., 2d Sess. 59-60 (1990)).

She also argues that EEOC guidelines favor a flexible approach wherein unions and employers "consult and work out an accommodation," br. at 14, and maintains that the Commission could accommodate her by excusing her from forced overtime without undue hardship, difficulty or expense. Br. at 16. In fact, as Kralik emphasizes, the union and the Commission agreed on a temporary basis that the Commission would not force Kralik to work overtime and, as she pointed out in her motion for reconsideration, the Commission with the union's agreement accommodated another toll collector by assigning him to a shift without regard for the bidding process in the collective bargaining agreement. Furthermore, in practice the Commission rarely would need to assign Kralik to forced overtime. Indeed, at oral argument before this court Kralik indicated that during the pendency of this litigation the Commission never has required her to work forced overtime. She also contends that the cases relied on by the district court and cited above are either factually distinct or incorrectly decided. Br. at 17-19.

In considering the merits of this appeal we reiterate that the accommodation Kralik seeks would require the Commission to violate the collective bargaining agreement. Nevertheless, we agree with her that the collective bargaining agreement is not necessarily decisive because the union and the Commission together may modify the agreement as they did on a temporary basis by relieving her from forced overtime. But Kralik points to nothing in the

9

record to support a contention that the union has communicated to the Commission a willingness to waive the forced overtime provision with respect to her as long as she is a qualified individual with a disability. 4 Rather, she refers to a letter to her by the secretary-treasurer of her union stating that "it may be possible to waive[the forced overtime] provision if it can be shown that your injury qualifies you under the [ADA]." App. at 82-83. Of course, a union waiver of the forced overtime provision would vitiate the Commission's argument that it could not accommodate Kralik without violating the agreement. Unfortunately for Kralik, however, the union has not given the Commission such a waiver. Accordingly, the issue before us is clear: is the accommodation Kralik seeks unreasonable because it would require the Commission to infringe on the seniority rights of other employees in the collective bargaining agreement?5

On this point we follow Eckles, 94 F.3d 1041, which is a compelling precedent. In that case Eckles, who suffered from epilepsy, sought from his employer, Conrail, an accommodation consisting of an assignment to a position appropriate for his disability. The difficulty with his request was that it would have required Conrail to infringe on the seniority rights of other employees under the collective bargaining agreement. Id. at 1043. Thus, while Conrail did not contend that the accommodation would place an undue burden on it, it argued that the accommodation simply was not required "due to its effects on the legitimate seniority rights of other employees." Id. at 1045. Accordingly, the issue in Eckles was: "whether the ADA requires as `reasonable accommodation' that a disabled individual be

_____

4. In view of the EEOC charge Kralik brought against the union after the district court ruled against her, which we discuss below, we doubt that it did so.

5. Kralik also argues that the requested accommodation does not place an undue burden on the Commission because of "the existence of provisions [in the collective bargaining agreement] for other workers to voluntarily perform [overtime]." Br. at 7. This observation does not support her case because the forced overtime provision by its terms applies only "in the event that overtime opportunities are refused by all employees."

10

given special job placement ... in violation of a bona fide seniority system in place under a collectively bargained agreement, when such accommodation is the only way of meeting the job restrictions of that disabled individual." Id. at 1045-46.

The Eckles court pointed out that the case posed "a conflict not so much between the rights of the disabled individual and his employer and union, but between the rights of the disabled individual and those of his co-workers." Id. at 1046. The court also observed that the applicability of 42 U.S.C. S 12112(b)(2), which Kralik invokes and which prohibits discrimination brought about through participation in contractual relationships, depended in that case on establishing a violation of section 12112(b)(5)(A), since the only form of discrimination alleged there, as here, was the failure to provide a reasonable accommodation. Thus, if reasonable accommodation "does not require reassignment to a position held by another employee, the collective bargaining agreement at issue did not subject Eckles to prohibited discrimination by establishing a bona fide seniority system that regulates the holding of positions at Conrail." Eckles, 94 F.2d at 1046.

The court acknowledged that a covered entity cannot avoid its ADA duties by contractual manipulation. But inasmuch as Eckles did not claim that "the seniority system was established, even in part, in order to bypass the duty to accommodate" a qualified individual with a disability under the ADA, there was "no evidence of . . . subterfuge." Id. The court then observed that:

> if the ADA does not require that collectively bargained seniority rights be compromised in order to reasonably accommodate a disabled individual, Eckles cannot establish that Conrail and the Union are guilty of participating in a contractual arrangement that has the effect of subjecting him to prohibited discrimination. Hence the issue is simply what is required by `reasonable accommodation.'

Id. at 1046.

The court recognized that although the accommodation Eckles sought did not require firing of other employees,

11

"what would be lost to the other employees, particularly more senior employees, would be some of the value of their seniority with the company, not their employment." Id. at 1047. The court held that even this limited infringement on other employees' seniority rights was not reasonable under the ADA, and pointed out that:

> courts have been unanimous in rejecting the claim that `reasonable accommodation' under the Rehabilitation Act requires reassignment of a disabled employee in violation of a bona fide seniority system. In fact, a virtual per se rule has emerged that such reassignment is not required under the Rehabilitation Act's duty to reasonably accommodate.

Id. (citations omitted). Thus, the Eckles court explained that Congress adopted the ADA against "the backdrop of well-established precedent that `reasonable accommodation' under the Rehabilitation Act had never been held to require trumping the seniority rights of other employees." Id. at 1048.

In concluding its comprehensive discussion, the Eckles court held that "[a]fter examining the text, background, and legislative history of the ADA duty of `reasonable accommodation,' we conclude that the ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees." Id. at 1051. While the court recognized "that many of the `reasonable accommodations' specifically proposed within the ADA also have effects on other workers," it found that "collectively bargained seniority rights have a pre-existing special status in the law and that Congress to date has shown no intent to alter this status by the duties created under the ADA." Id. at 1052.

Eckles is convincing and is in harmony with the other precedents we cite above. Thus, we, like the Fifth Circuit Court of Appeals, will follow it. See Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir. 1997) ("Following the other circuits which have considered this issue, we hold that the ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement.").6 In doing so we

_____

6. Kralik relies heavily on Aka v. Washington Hosp. Center, 116 F.3d 876, 890-97 (D.C. Cir. 1997), reh'g en banc granted and judgment

recognize that in Eckles the proposed infringement on other employees' seniority rights was far more intrusive than the infringement at issue here. Yet the lesser degree of infringement on other employees' seniority rights does not distinguish adequately this case from Eckles, which recognized the principle at stake here: an accommodation to one employee which violates the seniority rights of other employees in a collective bargaining agreement simply is not reasonable.

Requiring an employer to violate the collective bargaining agreement in situations where the employer regards the infringement on seniority rights as insubstantial and the accommodation reasonable unfairly would expose the employer to potential union grievances as neither the union nor the arbitrator hearing a grievance would be required to disregard violations of the collective bargaining agreement. Thus, a rule requiring an employer to violate seniority rights would subject the employer to the cost of defending itself against grievances as well as to the risk that it might be subject to a costly remedy. Accordingly, even minor infringements on other employees' seniority rights impose unreasonable burdens on employers who, by reason of those infringements, must face the consequences of violating the collective bargaining agreement.

In this regard, we point out that, for reasons we do not know, the union apparently did not agree that the Commission could relieve Kralik from forced overtime for the duration of her status as a qualified individual with a disability. While Kralik seemed to contend at oral argument that the union would agree to such an arrangement if she

_____

vacated, 124 F.3d 1302 (D.C. Cir. 1997), which is inconsistent with Eckles and thus with the result we reach. Aka stated that "in some cases the degree of infringement imposed by a `reasonable accommodation' to one employee's disability on a `right' held by other employees under the collective bargaining agreement may be extremely slight, and may impose virtually no `hardship' at all," and thus stated that it would be "inappropriate to draw blanket conclusions regarding whether the ADA can `trump' provisions in collective bargaining agreements." Id. at 896. Aka, however, has been vacated and in any event is inconsistent with Eckles, which we find to be soundly reasoned.

13

established that she was a qualified individual with a disability who needed the accommodation, as we indicated above she points to nothing in the record to demonstrate that the union ever expressed to the Commission its willingness to extend the temporary agreement we have described.7

What makes the requested accommodation in this case unreasonable is not that it would disrupt the Commission's operations because we cannot say that it would do so. Rather, the requested accommodation is unreasonable because it would require the employer to violate its collective bargaining agreement and run the risks that the violation entails. Accordingly, we reject Kralik's suggestion that an accommodation which requires an employer to violate a collective bargaining agreement may impose virtually no hardship on the employer. In short, it is appropriate for the union, rather than the employer, to make the determination that the infringement is justifiable by releasing the employer from its obligation to follow the seniority provisions of the collective bargaining agreement to accommodate a qualified individual with a disability.8

At oral argument before us the Commission suggested that even if the union were willing to waive the forced overtime provision with respect to Kralik, because of the Commission's personnel needs it might not be able to accommodate Kralik by excusing her from forced overtime.

_____

7. According to Kralik the Commission has not applied the forced overtime provision to her during this litigation and yet the union has not instituted a grievance proceeding. While this may be true, it does not follow that the union will remain willing to refrain from grieving in the future. The union's apparent acquiescence merely is a de facto continuation of the temporary agreement we describe above. We decline to hold that the Commission is required to accommodate Kralik for the duration of her disability as we cannot assume that the union's acquiescence will continue indefinitely.

8. We note, moreover, that if an employer grants an accommodation by violating seniority rights of other employees under the collective bargaining agreement, the employer in its operations may be making no accommodation at all. As the Eckles court recognized, the accommodation instead will be made by the disabled employee's co-workers who will lose a benefit of their seniority status.

14

Obviously we need not explore that claim, which the Commission apparently did not advance in the district court. We also point out that our decision does not necessarily preclude Kralik from being excused from the forced overtime provisions as the union in the future might assure the Commission that it will agree to the Commission's relieving Kralik from those provisions if she is a qualified individual with a disability who needs the accommodation. Such a waiver would eliminate the basis for our conclusion that the accommodation Kralik seeks is not reasonable, leaving for determination the question of whether Kralik is a qualified individual with a disability who would be entitled to be relieved from forced overtime as a reasonable accommodation.

In light of our conclusions we will affirm the order for summary judgment entered December 16, 1996. Moreover, it is clear that the district court did not abuse its discretion in denying the motion for reconsideration, either on the grounds that the new material Kralik presented could not have affected the outcome of the case in the district court any more than it has here, see Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), or on the separate grounds that Kralik offered no justification for her untimely presentation of the material. Consequently, we also will affirm the order entered January 14, 1997, denying the motion for reconsideration.

B. The cross appeal

The final issue that we address is the Commission's contention that the district court erred in denying its motion for summary judgment on the question of whether Kralik was a qualified individual with a disability. The Commission recognizes its apparent lack of standing to appeal and acknowledges "that in the normal course a party must be aggrieved by the final judgment of the district court which it seeks to challenge." Br. at 16. In fact, it even cites cases supporting the principle, namely Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333-34, 100 S.Ct. 1166, 1171-72 (1980), and Watson v. City of Newark, 746 F.2d 1008, 1010 (3d Cir. 1984). Yet it contends that courts "have permitted an appeal from a seemingly favorable

15

disposition when adverse practical consequences, not normally contemplated by legal theory or policy considerations, manifest themselves." Br. at 16. On this point the Commission contends that the denial of summary judgment has prejudiced it in an EEOC proceeding, which Kralik brought against the Commission and the union after the district court denied her motion for reconsideration, alleging retaliation for her having brought this action, and discrimination based on her disability and her sex.

We are satisfied that even if in some cases a completely successful party might have standing to appeal, this is not such a case. In its partial denial of the Commission's motion for summary judgment, the district court merely held that at a particular time based on the record before it there was a dispute of fact as to whether Kralik was a qualified individual with a disability. While we certainly understand why the Commission would like a ruling that Kralik was not a qualified individual with a disability at that time, the district court's inherently tentative conclusion, though unhelpful to the Commission, is not harmful to it either, because the conclusion does not preclude the Commission from rejecting a new accommodation sought by Kralik or from prevailing in any challenge to that rejection on the grounds that she is not a qualified individual with a disability.9  The Commission has failed to identify sufficient adverse consequences of the order from which it cross appeals to confer standing to appeal. See In re DES Litig., 7 F.3d 20, 23–25 (2d Cir. 1993) (dismissing appeal for lack of standing where appellant prevailed below and was not aggrieved by collateral estoppel effects or other prejudicial effects of determination below).

III. CONCLUSION

In view of the aforesaid, we will affirm the orders of December 16, 1996, and January 14, 1997, and will

_____

9. We do not suggest that we could not have reviewed the part of the order denying summary judgment had we disagreed with the district court's entry of summary judgment on the issues addressed in this opinion.

16

dismiss the cross appeal. The parties will bear their own costs on this appeal.

17

MANSMANN, Circuit Judge, dissenting.

Because I would not hold that a requested accommodation for purposes of the ADA is per se unreasonable where it conflicts with the seniority provisions of a collective bargaining agreement, I respectfully dissent. Although the majority holdingfinds support in the caselaw, resolution of the issue before us is not as straightforward as the majority opinion suggests.

Tension between the ADA and other labor relations statutes, particularly the National Labor Relations Act ("NLRA"), is inevitable. As one commentator observed:

> While the ADA fosters equal employment opportunities for all Americans without regard to disability, its drafters ignored a very serious problem. The ADA, while promoting the rights of individual Americans in the workplace, conflicts dramatically with the[NLRA], an act designed to promote collective rights in the workplace. The ADA, the regulations, and the Interpretive Guidance all fail to address the issue of how to reasonably accommodate an individual with a disability under the ADA in a unionized setting-- where such rights are typically received as part of a collective bargaining agreement. As a result of this oversight, conflicts between the NLRA and the ADA have arisen.

Robert W. Pritchard, Avoiding the Inevitable: Resolving the Conflicts Between the ADA and the NLRA, 11 The Labor Lawyer 375 (1995). This statutory tension has been particularly apparent where, as here, the duty to provide a reasonable accommodation under the ADA conflicts with an arguably contrary collective bargaining obligation.

The text of the ADA does not "decisively answer the question of whether `reasonable accommodation' can require that otherwise valid seniority rights of other employees be trumped." Eckles v. Consolidated Rail Corporation, 94 F.3d 1041, 1047 (7th Cir. 1996). In this way, the ADA differs from other anti-discrimination statutes. For example, Title VII of the Civil Rights Act of 1964 (Title VII) specifically authorizes employers"[t]o apply different standards of compensation, or different terms,

18

conditions, or privileges of employment pursuant to a bona fide seniority or merit system. . . ." 42 U.S.C. S 2000e-2(h). The Age Discrimination in Employment Act (ADEA) contains an analogous provision: "It shall not be unlawful for an employer, employment agency or labor organization . . . to observe the terms of a bona fide seniority system.. . ." 29 U.S.C. S 623(f)(2)(A). Courts required to assess the competing concerns of reasonable accommodation and the sanctity of the collective bargaining agreement have regularly relied on precedent generated under the Rehabilitation Act of 1973 (the Rehabilitation Act). 29 U.S.C. S 701 et seq. "[T]he term `reasonable accommodation' in the ADA was apparently borrowed from the regulations issued by the Equal Employment Opportunity Commission [EEOC] in implementation of the Rehabilitation Act. . . ." Eckles, 94 F.3d at 1047. In determining whether an accommodation which conflicts with a collective bargaining agreement can ever be reasonable, courts construing the Rehabilitation Act have adopted a per se rule: a collective bargaining agreement will always "trump" the accommodation.1

Confronted with Congress' failure to articulate definitively a different rule in cases arising under the ADA, a number of our sister courts of appeals have applied or have indicated that they would apply this Rehabilitation Act per se rule in reasonable accommodation cases arising under the ADA.2 The majority, relying primarily upon the decision

_____

1. See, e.g., Shea v. Tisch, 870 F.2d 786 (1st Cir. 1989); Carter v. Tisch,
822 F.2d 465 (4th Cir. 1987); Daubert v. United States Postal Service, 733 F.2d 1367 (10th Cir. 1984).

2. Maj. opinion at 6. It is important to note that the courts in Milton v. Scrivner, Inc., 53 F.3d 1118 (10th Cir. 1995), and Wooten v. Farmland Foods, 58 F.3d 382 (8th Cir. 1995), discussed the per se rule in the context of the ADA in dicta. Neither analyzed the conflict between the ADA and the NLRA.

It is important to note, too, that a number of commentators have criticized application of a per se rule in the context of the ADA. See Jerry
M. Hunter, Potential Conflicts Between Obligations Imposed on Employees and Unions by the National Labor Relations Act and the Americans with Disabilities Act, 13 N. Ill. U. L. Rev. 207 (1993); Robert W. Pritchard,

19

in Eckles, embraces this approach. I am convinced, however, that this per se rule, imported from cases decided under the Rehabilitation Act, was not intended to apply in the context of the ADA.

Although the plain text of the ADA does not definitively resolve the issue before us, it does contain language which suggests that seniority systems, inviolable under the Rehabilitation Act, might, in certain circumstances, yield to reasonable accommodation claims. Unlike the Rehabilitation Act and Title VII, the ADA defines the term "reasonable accommodation" to include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. S 12111(9)(B). In a unionized workplace, these potential accommodations will almost always conflict to some degree with established seniority systems. The ADA, however, indicates that these accommodations should be made available without addressing their impact on seniority concerns. While this feature of the ADA is not dispositive, it is significant, especially when it is considered against the background of the ADA's broad sweep3 and its legislative history.

The Report of the House Committee on Education and Labor supports the conclusion that under the ADA, the collective bargaining agreements, including those provisions impacting seniority, were not intended to "trump" reasonable accommodation claims:

_____

Avoiding the Inevitable: Resolving the Conflicts Between the ADA and the NLRA, 11 The Labor Lawyer 375 (1995); Joanne Jocha Ervin, Reasonable Accommodation and the Collective Bargaining Agreement Under the Americans with Disabilities Act, 1991 Det. C. L. Rev. 925 (1991); Rose-Daly Rooney, Note, Reconciling Conflicts Between the Americans with Disabilities Act and the National Labor Relations Act to Accommodate People With Disabilities, 6 DePaul Bus. L. J. 387 (1994).

3. The ADA expanded the scope of the Rehabilitation Act both in coverage and in the degree of protection afforded. See, Note, Civil Rights and the Disabled: A Comparison of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 in the Employment Setting, 54 Alb. L. Rev. 123 124-25 (1989).

> The collective bargaining agreement could be relevant
> . . . in determining whether a given accommodation is
> reasonable. For example, if a collective bargaining
> agreement reserves certain jobs for employees with a
> given amount of seniority, it may be considered as a
> factor in determining whether it is a reasonable
> accommodation to assign an employee with a disability
> without seniority to that job. However, the agreement
> would not be determinative on this issue.[4]

H.R. Rep. No. 485 (II), 101st Cong., 2d Sess. 63 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 345 (emphasis added). These reports provide sound foundation for the argument that Congress intended to depart from the line of authority developed under the Rehabilitation Act holding that a requested accommodation is per se unreasonable when it conflicts with a seniority provision in a collective bargaining agreement. The legislative history indicates that courts are obligated to look beyond the collective bargaining agreement in order to determine whether a particular accommodation is reasonable. The status of the collective bargaining agreement under the ADA has been diminished; it is now only one factor to be considered in determining whether a proposed accommodation is reasonable.

Additional evidence for this view of the role of collective bargaining agreements under the ADA is found in the legislative history relating to the "undue hardship" provisions of the Act. Under the ADA, an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes prohibited discrimination "unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business. . . ." 42 U.S.C. S 12112(b)(5)(A).

The EEOC regulations interpreting this section provide that an employer may demonstrate "that the provision of a particular accommodation would be unduly disruptive to its

---

4. The Report of the Senate Committee on Labor and Human Resources contains language identical to that of the House Report. See S.Rep. No. 101-116 at 32 (1989).

21

other employees or to the functioning of its business. The terms of a collective bargaining agreement may be relevant to this determination." 29 C.F.R. S 1630.15(d) app. (1996) (emphasis added). The EEOC's Technical Assistance Manual underscores the reduced role assigned to the collective bargaining agreement under the ADA, stating that "[t]he terms of a collective bargaining agreement may be relevant in determining whether an accommodation would impose an undue hardship." EEOC Technical Assistance Manual S 3.09, at III-16 (1992). The example given in the Manual to illustrate the status of a collective bargaining agreement in determining undue hardship refers specifically to a situation where the requested accommodation conflicts with a seniority provision in a collective bargaining agreement:

> A worker who has a deteriorated disc condition and cannot perform the heavy labor functions of a machinist job, requests reassignment to a vacant clerk's job as a reasonable accommodation. If the collective bargaining agreement has specific seniority lists and requirements governing each craft, it might be an undue hardship to reassign this person if others had seniority for the clerk's job.

Id.

Clearly, the EEOC did not assume that Congress, in drafting the ADA, had incorporated the per se rule adopted by the majority. If seniority provisions of a collective bargaining agreement were inviolate under the Act, any conflicting proposed accommodation would automatically be unreasonable; there would never be a need to consider whether such an accommodation posed an undue hardship.

The text of the ADA, its legislative history, and the relevant EEOC regulations convince me that there are enough dissimilarities between the Rehabilitation Act and the ADA to warrant rejection of the per se rule announced by the majority in favor of a fact-intensive approach which examines whether a particular proposed accommodation constitutes an "undue hardship." This approach, which is consistent with the statute, the legislative history, and the

22

regulations, protects all parties, including those other employees subject to the terms of the collective bargaining agreement by allowing each accommodation to be examined in light of its cumulative impact on the business operation as a whole. Far from being ignored under this approach, the collective bargaining agreement is relegated to its intended status as a factor to be considered in determining whether a requested accommodation imposes an undue hardship.

Although I recognize that the opinion of the Court of Appeals for the D.C. Circuit in Aka v. Washington Hospital, 116 F.3d 876 (D.C. Cir. 1997), reh'g in banc granted and judgment vacated, 124 F.3d 1302 (D.C. Cir. 1997), lacks precedential value, I find its analysis and rejection of Eckles sound and adopt its reasoning as the essence of my disagreement with the majority:

> [I] reject the Eckles court's analysis because the plain language of the ADA requires employers to provide accommodations to the disabilities of qualified employees unless the accommodation in question would be "unreasonable" or would impose an "undue hardship," because the suggested "reasonable accommodations" listed in the statute include several . . . that commonly will conflict to some degree with the applicable collective bargaining agreements in unionized workplaces -- including the portions of those agreements creating "seniority rights," and because both the legislative history of the ADA and the relevant EEOC regulations clearly indicate that the fact that a particular accommodation would require some departure from the terms of a collective bargaining agreement should not in itself determine the question of whether an employer may be required to provide the accommodation. . . .

* * * *

> [I] likewise think it is inappropriate to draw blanket conclusions regarding whether the ADA can "trump" provisions in collective bargaining agreements, or whether the ADA can require the "sacrifice[ ]" of "rights" created in other employees by these agreements. . . .

23

> [A]fter all, in some cases the degree of infringement imposed . . . may impose virtually no "hardship" at all. If one nondisabled employee entitled to a vacant position under the seniority system in the collective bargaining agreement must wait an extra day before receiving an identical assignment because the earlier vacancy was filled by a disabled employee pursuant to the ADA, would this entail the "sacrifice" of rights created in other employees under the agreement? . . . [I] think that the ADA's "reasonable accommodation" provisions require us to bear in mind that conflicts between accommodations to disabled employees and the terms of applicable collective bargaining agreements exist on a continuum rather than functioning like an "on/off switch."5

At 895–96 (citations omitted).

The approach adopted by the majority in reliance on Eckles could well lead to absurd results which run counter to the broad remedial purposes of the ADA.6 The better approach would be to jettison the per se rule developed in the context of the far less sweeping Rehabilitation Act in favor of the balancing process already in place under the ADA in the determination of "undue hardship." The result reached in Eckles under the undue hardship balancing analysis would likely be unchanged where in this case, the outcome would be far less certain.

For the foregoing reasons, I would reverse the order of the district court granting summary judgment in favor of the Commission based on the court's conclusion that the requested accommodation was per se unreasonable. In all other respects, I would affirm the order of the district court.

_____

5. A similar result was reached in a case decided prior to Eckles, Emrick v. Libbey–Owens–Ford Co., 875 F. Supp. 393, 396 (E.D. Tex. 1995).

6. The academic response to the decision in Eckles has been less than enthusiastic. See William Mcdevitt, Seniority Systems and the Americans with Disabilities Act: The Fate of Reasonable Accommodation after Eckles, 9 St. Thomas L. Rev. 359 (1997); Condon A. McGlothlen and Gary N. Savine, Eckles v. Consolidated Rail Corp.: Reconciling the ADA with Collective Bargaining Agreements: Is This the Correct Approach?; 46 DePaul L. Rev. 1043 (1997).

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit