OPINION
AMBRO, Circuit Judge.
James J. Kania appeals the District Court’s grant of summary judgment to the United States Postal Service on his claims for disability discrimination and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. We affirm.[1]
I.
Kania is a letter carrier for the Postal Service at its Woods Run Station in Bellevue, Pennsylvania. In January 2004, he began suffering lower back pain and was diagnosed with facet syndrome, a condition that causes degeneration of cartilage between the discs of the lower back. Kania received Family Medical Leave Act (“FMLA”) certifications for more than 400 hours of missed work due to his back pain between March 2004 and June 2005. In May and June of 2005, he underwent lumbar facet nerve blocks and a lumbar facet rhizotomy, which decreased his pain levels.
In September 2005, a route examiner observed that Kania was unable to maintain “an acceptable walking pace” while on his route, and witnessed Kania take the prescription narcotic oxycodone. As a result, Lauren Alt, the Customer Service Manager for the Woods Run Station, placed Kania on limited duty pending the results of a fitness-for-duty medical examination. Kania complained to Alt and another supervisor, Ronda Lavezoli, that he was “being treated unfairly due to [his] disability,” and demanded that he be reinstated to his full-time duties as a letter carrier. He also filed grievances challenging his placement on limited duty and seeking back pay for the hours of work missed while on limited duty. During this time, Kania remodeled his own home and his son’s home, projects that included installing siding and new floors, painting, wiring, and renovating a bathroom.
In late 2005, Kania was examined by three physicians, each of whom concluded that Kania was capable of performing the essential functions of his job and should be reinstated to full-time work as a letter carrier. After receiving these reports, the Postal Service returned Kania to full-time duty in December 2005. Shortly thereafter, Kania and the Postal Service settled Kama’s grievances, and he was granted full back pay.
In February 2006, another supervisor of Kania, Norbert Graf, issued him a letter of warning for missing scan points on his delivery route on February 21, 2006. When Kania complained to Graf that he had not missed any scan points on that date, Graf allegedly told Kania that Lavezoli and Alt had forced Graf to issue the discipline because they were upset that Kania had filed grievances.
In March 2006, Kania expressed interest in a position in the maintenance department at the Postal Service’s General Mail Facility in Pittsburgh. Two months later, *340 he was notified that he was being “canvassed” for a position in the maintenance department. Because Kania was the only current Postal Service employee who had expressed interest in the position, his was the only application that was initially considered.
Kania informed Lavezoli and Michael Graf, the Acting Manager of the Woods Run Station (and Norbert Grafs brother), of his intention to transfer to the maintenance department. Two days later, Lavezoli issued Kania a seven-day suspension for unauthorized overtime taken in late April 2006. Kania, however, was on authorized leave on the dates identified by Lavezoli. Kania confronted Lavezoli about the erroneous basis for the suspension, and Lavezoli rescinded the suspension. However, he reissued the suspension for different dates on which Kania allegedly took unauthorized overtime. The newly identified dates, however, did not appear on the Postal Service’s records of overtime taken by Kania.
James DeLeonibus, a Manager of Maintenance Operations at the General Mail Facility, was instructed by Thomas Graf, the Maintenance Manager for the General Mail Facility (and another brother of Norbert Graf), to review Kama’s application. Among the documents in Kama’s file were (1) records of the letter of warning and seven-day suspension Kania received in 2006, and (2) an evaluation from Lavezoli, in which she stated that Kania was “willing to work but cannot complete his duties in a timely manner.” DeLeonibus rejected Kama’s application because his work record was “unsatisfactory,” as he had “current” discipline in his record. In his deposition, DeLeonibus confirmed that he rejected Kama’s application solely because Kania had a record of “live” discipline.
Kania filed a formal Equal Employment Opportunity complaint in September 2007, alleging that he had suffered disability discrimination and retaliation when he was not selected for the maintenance position. After his claim was denied in February 2007, Kania filed suit in the District Court for the Western District of Pennsylvania, alleging disability discrimination, retaliation, and hostile work environment arising not only out of his non-selection for the maintenance position, but also his placement on limited duty in 2005 and the discipline imposed on him in February and May 2006.
In November 2007, the District Court dismissed Kania’s claims to the extent they involved actions other than his non-selection for the maintenance position, as Kania had not filed EEO complaints regarding his placement on limited duty or the discipline imposed in 2006.[2] Following discovery, the Magistrate Judge recommended that summary judgment be granted in favor of the Postal Service on the disability discrimination and retaliation claims of Kania because he had failed to establish a prima, facie case for either. The District Court approved and adopted the Magistrate Judge’s report and recommendation in entering judgment in favor of the Postal Service. Kania timely appealed.
II.
Kania argues that the District Court improperly granted summary judgment to the Postal Service on his claims for disability discrimination and retaliation. We address each claim in turn.[3]
*341 in.
To establish a prima facie case of disability discrimination under the Rehabilitation Act,[4] a plaintiff must show that he (1) has a “disability,” (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, and (3) was nonetheless prevented from performing the job. Wishkin v. Potter, 476 F.3d 180, 184-85 (3d Cir.2007) (quoting Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir.1996)). The Rehabilitation Act defines an “individual with a disability” as someone who (1) has a physical or mental impairment that substantially limits his/her major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1). The District Court determined that Kania failed to establish the first element of his prima facie case because he did not qualify as an “individual with a disability” under any of these definitions. We agree.[5]

A. Actual Disability

A “substantial ] limitation]” is a significant restriction on a major life activity “as compared to ... the average person in the *342 general population.” Toyota Motor Mfg., Ky., Inc. v. Williams, 584 U.S. 184, 195-96, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) 0quoting 29 CFR § 1630.2(j) (2001)). A major life activity is one that is “of central importance to daily life,” id. at 197, 122 5.Ct. 681, such as “caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working,” 29 C.F.R. § 1630.2(f), as well as “sitting, standing, lifting [and] reaching.” Kralik v. Durbin, 130 F.3d 76, 78-79 (3d Cir.1997) (quoting 29 C.F.R. § 1630 app.) (alteration in original).
Kania argues that he presented sufficient evidence that he is “substantially limit[ed]” in the major life activities of walking, standing, and working. But despite his diagnosis of facet syndrome, the record reveals no doctor who has placed a physical limitation on Kania. He continues to work as a letter carrier, which requires standing and walking for several hours a day. Moreover, Kania testified in deposition that he is able to drive a car, do limited jogging and running, shop, and care for his son. Kania also testified that he is able to function even when his back pain is sharp. In light of these facts, we agree with the District Court that Kania does not meet the “demanding standard for qualifying as disabled.” Toyota Motor Mfg., 534 U.S. at 197, 122 S.Ct. 681.
In response, Kania emphasizes the FMLA certifications he received for more than 400 hours of missed work in 2004-2005, before his non-selection for the maintenance position.[6] However, we evaluate whether a person is disabled “from the point at which the alleged discriminatory decision was made” — here, August 2006. Bowers v. NCAA, 475 F.3d 524, 535-36 (3d Cir.2007). In May and June of 2005, Kania underwent procedures that “dramatically” reduced his pain level: in May 2005, he reported a 70% reduction in pain, and in July 2005, he described his pain level as a two on a scale of one to ten. Moreover, Kania engaged in significant physical labor in 2005 and 2006, including remodeling two homes. This activity belies Kama’s claim that he was substantially limited in a major life activity at the time of his non-selection.
Kania also places great weight on the March 2008 report of Dr. Patrick N. Smith, an orthopedic surgeon, who stated that he “fe[lt] that [the facet syndrome] seems to interfere with [Kama’s] abilities to perform certain activities, particularly as it relates to his occupation,” and that Kama’s condition could deteriorate “over the next several years” unless he switched to an “occupation with less physical demands.” Dr. Smith’s 2008 opinion that facet syndrome “seems to interfere” with Kama’s ability to work is not enough to create a genuine issue of material fact as to whether Kania was substantially limited in the major life activity of working in August 2006. The possibility that Kama’s facet syndrome could worsen in the future is also insufficient to show that he was disabled in August 2006. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (“[A] person [must] be presently — -not potentially or hypothetically — substantially limited in order to demonstrate a disability”).
Finally, even accepting that Kania experiences limitations on his ability to work as a letter carrier, he has not demonstrated that these limitations make him “unable to work in a broad class of jobs.” Id. at 491, 119 S.Ct. 2139 (emphasis added); see also id. at 492, 119 S.Ct. 2139 (“To be substantially limited in the major life activity of working, ... one must be precluded from *343 more than one type of job, a specialized job, or a particular job choice.”). Accordingly, we conclude that the District Court correctly determined that Kania was not disabled.[7]

B. Regarded As Having a Disability

We also conclude that Kania failed to demonstrate that the Postal Service “regarded” him as having a disability. He argues that his supervisor’s ordering a fitness-for-duty examination, after learning of Kama’s inability to maintain an “acceptable walking pace,” creates a genuine issue of material fact whether the Postal Service regarded him as being disabled. But an employer’s direction that an employee undergo a medical examination “only establishes that the employer harbors doubts (not certainties) with respect to an employee’s ability to perform a particular job,” and those doubts “alone do not demonstrate that the employee was held in any particular regard.” Tice, 247 F.3d at 515; see also Kelly v. Drexel Univ., 94 F.3d 102, 109 (Bd Cir.1996) (that plaintiffs employer was aware of his visible walking impairment was insufficient to show the employer regarded the employee as disabled). Indeed, when three physicians cleared Kania to return to his full-time duties as a letter carrier, the Postal Service reinstated him.
Moreover, we know of no evidence suggesting that DeLeonibus (the relevant decision-maker) had any knowledge that Kania had a physical impairment. De-Leonibus testified that he was completely unaware of Kama’s medical problems when he reviewed his application and decided not to select him for the maintenance position, and did not communicate with Kama’s supervisors during his review.[8]
Kania nonetheless points to “circumstantial evidence” suggesting that DeLeonibus was aware of his alleged impairment. For example, Kania claims that the month-long gap between DeLeonibus’ receipt of his application and the decision not to select Kania suggests that DeLeonibus communicated with Kama’s supervisors during this period and was informed of his disability. This is speculation, and it is insufficient to defeat summary judgment. See Geraci v. Moody-Tottrup, Int’l, Inc., 82 F.3d 578, 582 (3d Cir.1996) (speculation that members of management “lied about their lack of knowledge” of plaintiffs pregnancy was insufficient to create a genuine issue of material fact); Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 931-2 (7th Cir.1995) *344 (speculation about employer’s knowledge of plaintiffs disability did not create a genuine issue of material fact; “instead, it ereate[d] a false issue, the demolition of which is a primary goal of summary judgment”).
In sum, we conclude that the District Court properly entered summary judgment in favor of the Postal Service on Kama’s disability discrimination claim.
III.
To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his protected activity and the adverse employment action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir.1997). Kania claims that his non-selection for the maintenance position was in retaliation for two protected actions: (1) his complaint to Alt that he was “being singled out because of [his] disability” when he was ordered to undergo a fitness-for-duty examination; and (2) his filing of grievances challenging his placement on limited duty. The District Court agreed that these acts qualified as protected activity, but concluded that Kania had not established a causal connection between that protected activity and his non-selection for the maintenance position.
We agree with the Court. Generally, a plaintiff may establish the requisite causal nexus by demonstrating either “(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing.” Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir.2007). Kania has demonstrated neither. First, his not getting the maintenance position occurred 11 months after his grievances and complaint to Alt. See Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir.2007) (five-month gap was insufficient to establish a causal connection between protected activity and adverse employment action). Second, as with his disability discrimination claim, Kania has produced no evidence demonstrating that DeLeonibus was aware of Kama’s grievances or his complaint to Alt. Indeed, Kania testified that he has never met DeLeonibus, and does not believe that DeLeonibus retaliated against him when he rejected his application. Accordingly, we conclude that the District Court appropriately entered summary judgment in favor of the Postal Service on Kama’s retaliation claim.
H: * * * ❖ #
In this context, we affirm the judgment of the District Court.

. The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

. Kania concedes on appeal that he failed to exhaust his administrative remedies as to these claims.

. We review a grant of summary judgment de novo, using the same standards as the District Court. Jakimas v. Hoffmann-LaRoche, Inc., 485 F.3d 770, 777 (3d Cir.2007). We view the facts in the light most favorable to the nonmoving party. Id.) Erie Telecomms. Inc. v. City of Erie, 853 F.2d 1084, 1093 (3d Cir.1988). A party is entitled to summary judg *341 ment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits[,] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c)(2).

. The Rehabilitation Act provides in pertinent part: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.” 29 U.S.C. § 794(a).

. On September 25, 2008 — after the USPS had moved for summary judgment, but before Kania had responded — President George W. Bush signed into law the ADA Amendments Act of 2008 (the “Act”), which took effect on January 1, 2009. Pub.L. No. 110-325, 122 Stat. 3553, 3559. The Act expands the definition of "disability” under the ADA and the Rehabilitation Act. See id. § 4(a), 122 Stat. at 3555 ("The definition of disability in this Act shall be construed in favor of broad coverage of individuals”). At our request, the parties submitted supplemental letter briefs addressing the effect of the Act, if any, on Kania’s claims. Although he submitted a supplemental letter brief, Kania did not address whether the Act applies retroactively.
We have little difficulty concluding that it does not apply retroactively. First, the Act lacks any “express command” that it is to be applied retroactively. Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Indeed, it appears to contain an "express command” that it not apply retroactively, as Congress delayed its effective date by two months. See Lytes v. DC Water & Sewer Auth., 572 F.3d 936, 940 (D.C.Cir.2009) ("By delaying the effective date of the [Act], the Congress clearly indicated the statute would apply only from January 1, 2009 forward.”). In addition, the Act affects “substantive rights, liabilities, or duties," as it substantially broadens the definition of "disability,” and thus expands the class of employees entitled to protection under the Rehabilitation Act. See Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006) (in the absence of an express statutory command, courts must consider whether applying the statute "would have a retroactive consequence in the disfavored sense of ‘affecting substantial rights, liabilities, or duties [on the basis of] conduct arising before [the statute’s] enactment' ”) (quoting Landgraf, 511 U.S. at 278, 114 S.Ct. 1483) (first alteration in original). Accordingly, we join those Courts of Appeals that have addressed the issue and concluded that the Act does not apply retroactively. See Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir.2009); Fredricksen v. United Parcel Serv., 581 F.3d 516, 521 n. 1 (7th Cir.2009); Lytes, 572 F.3d at 939-42; Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565-67 (6th Cir.2009); EEOC v. Agro Distribution, LLC, 555 F.3d 462, 469 n. 8 (5th Cir.2009).

. As stated in 29 C.F.R. § 825.702(b), a “serious health condition" under the FMLA is a “different concept!]” than the term "disability," and "must be analyzed separately."

. Because we believe that Kama’s impairment does not quality as a "disability” under the Rehabilitation Act, we also agree with the District Court that he has not proven the existence of a "record” of disability. See Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 (3d Cir.2001) ("A plaintiff attempting to prove the existence of a ‘record’ of disability still must demonstrate that the recorded impairment is a ‘disability’....”).

. In Olson v. General Electric Astrospace, 101 F.3d 947 (3d Cir.1996), we held that although the decision-maker was unaware of the plaintiff’s alleged disability, the plaintiff could still demonstrate that he was “regarded as” having a disability because: (1) the supervisor who had knowledge of the plaintiff’s impairment was "directly involved in the hiring process,” and (2) the hiring decision was based largely on that supervisor’s recommendation, in which the supervisor "made multiple references to the fact that [the plaintiff] had missed a significant amount of work because of illness.” Id. at 954.
There is no similar basis on which to impute the alleged knowledge of Kama's supervisors to DeLeonibus. Those supervisors were not involved in the hiring process, and DeLeonibus never spoke with them when he reviewed Kania's file. Although the file included an evaluation from Lavezoli in which she stated that Kania was "willing to work, but cannot complete his duties in a timely manner,” no reference was made to Kania’s impairment.