RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SHERRY K. MILHOLLAND, M. Ed.,
        *Plaintiff-Appellant,*

    *v.*

No. 08-5568

SUMNER COUNTY BOARD OF EDUCATION;
BENNY C. BILLS, Individually,
        *Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 07-00216—Aleta Arthur Trauger, District Judge.

Argued: April 28, 2009

Decided and Filed: July 2, 2009

Before: GUY, ROGERS, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** W. Gary Blackburn, BLACKBURN & McCUNE, PLLC, Nashville, Tennessee, for Appellant. Amber St. John, LAW OFFICE OF AMBER ST. JOHN, Smyrna, Tennessee, for Appellees. **ON BRIEF:** W. Gary Blackburn, BLACKBURN & McCUNE, PLLC, Nashville, Tennessee, for Appellant. Amber St. John, LAW OFFICE OF AMBER ST. JOHN, Smyrna, Tennessee, for Appellees.

_____

**OPINION**

_____

ROGERS, Circuit Judge. Sherry Milholland appeals the district court's grant of summary judgment in favor of the defendants on her Americans with Disabilities Act (ADA) claim. Milholland has worked for the Sumner County Board of Education as a teacher and administrator for fourteen years. Milholland suffered from arthritis and alleged that the Board's Director of Schools regarded her as disabled, and therefore transferred her from an

administrative position to a classroom teaching position.   The recently-enacted ADA Amendments Act of 2008 does not apply to this case.  Under the prior version of the statute, the facts construed in the light most favorable to Milholland do not show a genuine issue for trial that the defendants regarded Milholland as disabled.   The district court therefore properly ruled for the defendants.

**I.**

Sherry Milholland has worked as a teacher and administrator for the Sumner County Board of Education since 1995.  In 2001, Milholland was diagnosed with inflammatory arthritis. Milholland's doctor never gave her any work restrictions and her condition did not limit her ability to perform either as a classroom teacher or as a school administrator. Milholland did not inform the Board of her condition nor did she ask for any accommodation.

At the time of Milholland's diagnosis, Benny Bills was working as the principal of Gallatin High School, and Milholland's husband was a teacher at that school.  Milholland's husband generally discussed Milholland's health problems with Bills, but Milholland's husband never told Bills about Milholland's specific diagnosis.  Bills continued to inquire about Milholland's health at social occasions.  Bills later became the Director of Schools for Sumner County.

In May 2004, Milholland became one of the two assistant principals at Knox Doss Middle School.   Her principal, Mike Brown, was aware of her medical condition. Milholland had a difficult working relationship with the other assistant principal, Rufus Lowe.  Milholland told Brown that Lowe did not carry his share of the workload.

On March 13, 2006, Milholland met with Bills to discuss the issues at the school. Milholland complained about Lowe's performance and noted that it was increasing her own workload. Bills brought up Milholland's own performance, and Milholland claims that Bills said something to the effect of "Don't you think it would be easier on your health if you would just go back to the classroom?"  Milholland Dep., p. 92.  Bills admitted that he discussed Milholland's return to teaching, but stated that his comment was not related to Milholland's health.  Rather he was only discussing the fact that administrative positions

involved more work and stress than teaching positions. After the meeting, Milholland sent Bills a follow-up letter stating that she "simply wanted [Bills] to be aware that [she] strongly felt that [she] was plenty healthy enough to continue as an administrator, because [Bills] had brought up that question about going back to the classroom." Milholland Dep., p. 94. The letter stated that her "illness, thanks to a tremendous rheumatologist and new medications, is well under control." Milholland Dep., p. 94. Milholland asked to stay in an administrative position.

In early 2006, Brown and Bills met to discuss the situation at Knox Doss Middle School and Milholland and Lowe's working relationship. Although both Brown and Bills had greater problems with Lowe's performance than with Milholland's, they noted that "teachers did not have that working relationship of respect with Mrs. Milholland because there was always fraction, discord between [her and Lowe]." Bills Dep., p. 45. Brown and Bills decided to solve the problem by transferring both Milholland and Lowe from the school.[1] Brown and Bills believed that transferring both employees would create a "clean slate with faculty, with parents, and with students." Bills Dep., p. 44-45. Brown filled out a request to transfer Milholland after the decision was made.

In April 2006, Milholland requested to be transferred to one of two positions: principal at Wessington Place Elementary School or Materials Center Supervisor at the Board's Central Office. Brown recommended transfer to the principal position. Bills could have approved the transfer without interviewing Milholland or offering the position to other applicants, but he chose not to do so. Milholland interviewed for the position, but was not chosen. Instead, Bills transferred Milholland to a teaching position at Station Camp High School. Bills told her she was being transferred because she was not "getting the job done" as vice principal. Milholland Dep., p. 99.

After learning of her transfer, Milholland and her husband set up meetings with Bills. The first meeting was between Bills and Milholland's husband. Milholland's

---

[1]Milholland claims that Brown did not intend to have her transferred. The district court found that this characterization was not supported by the record because Brown stated that, during the discussion, "it became apparent" that Milholland would also need to be transferred. *Milholland v. Sumner County Bd. of Educ.*, No. 3:07-cv-0216, 2008 WL 974726, at *1 n.3 (M.D. Tenn. Apr. 8, 2008). Milholland presents no evidence that it was not a unified decision.

husband alleged that, during the meeting, Bills told him the transfer was because Milholland had missed too many days of work, but that Bills did not specifically refer to Milholland's health. The second meeting included all three individuals, after Milholland retained counsel. Milholland unsuccessfully attempted to record the conversation on a hidden audio device. Milholland alleges that, during the meeting, her husband asked Bills if he discussed Milholland's health during the March 13, 2006 meeting and that Bills confirmed that he did.

In August 2006, Milholland filed a discrimination charge with the EEOC, and she received a right to sue letter in January 2007. On February 21, 2007, Milholland filed this suit in the Middle District of Tennessee against the Board of Education and against Bills, in his official and individual capacities, alleging violations of the ADA and the Tennessee Handicap Act and Human Rights Act. The district court dismissed the individual claims against Bills under the ADA and Tennessee Handicap Act for failure to state a claim. The defendants moved for summary judgment on the remaining claims. On April 8, 2008, the district court granted summary judgment as to the ADA claims and declined to exercise supplemental jurisdiction over the remaining state law claims. The district court determined that the defendants' general statements regarding Milholland's health did not support a finding that the defendants regarded her as impaired. The district court also found that Milholland was still able to work in the same class of jobs, so that she was not substantially limited in the life activity of working. Milholland now appeals.

**II.**

The recently-enacted ADA Amendments Act of 2008 does not govern this case because its application would have the type of impermissibly retroactive effect that requires a clearly-stated congressional intent. Under the prior version of the statute, the facts construed in the light most favorable to Milholland do not support a finding that the defendants regarded Milholland as disabled. Nor do the facts support a conclusion that the defendants regarded any impairment of Milholland's as substantially limiting her in her life activity of working. Milholland cannot make a prima facie case of

discrimination under the ADA and the district court properly granted summary judgment.

The ADA Amendments Act of 2008, which became effective on January 1, 2009, Pub. L. No. 110-325, § 8, 122 Stat. 3553, does not apply retroactively to govern conduct occurring before the Act became effective. Before January 1, 2009, the ADA defined a disability as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2) (2006). Under this definition, the impairment that a plaintiff was "regarded as having" under subpart (C) was an impairment as defined in subpart (A). In turn, under subpart (A), to limit the major life activity of working, a plaintiff had to show that she was regarded as having an impairment that substantially limited her life activity of working in the same "broad class of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999).

The amended version of the ADA no longer requires the plaintiff bringing a claim under subpart (C) to show that the impairment limited her life activity, including working in a broad class of jobs. The ADA now defines a disability as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment *(as described in paragraph (3)).*

42 U.S.C.A. § 12102(1) (2009) (added language italicized). Paragraph (3) states that

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

*Id.* § 12102(3)(A). Congress enacted the ADA Amendments Act in order to "reinstat[e] a broad scope of protection to be available under the ADA," and to overrule *Sutton*. Pub. L. No. 110-325, § 2, 122 Stat. 3553, 3554. We assume, for the purposes of our retroactivity analysis, that this change expands the coverage of the ADA to employer actions not previously covered.

The conduct at issue in this case occurred before the ADA Amendments Act became effective and, as in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), Congress did not "expressly prescribe[]" whether the statute should reach back to cover this conduct. *Id.* at 280. The statute only states that it "shall become effective on January 1, 2009." Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559. Congress did expressly state its intent was to overrule *Sutton* and "reinstat[e] a broad scope of protection to be available under the ADA," § 2(b)(1), 122 Stat. 3553, 3554. However, Congress's intent to "restore" prior protections "does not, by itself, reveal whether Congress intends the 'overruling' statute to apply retroactively." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 304 (1994).

Although in many situations "a court should apply the law in effect at the time it renders its decision, even though that law was enacted after the events that gave rise to the suit," there is nonetheless a "well-settled presumption against application of . . . new statutes that would have genuinely 'retroactive' effect." *Landgraf*, 511 U.S. at 273, 277 (citations and internal quotations omitted); *see also BellSouth Telecomms., Inc. v. Se. Tel., Inc.*, 462 F.3d 650, 657 (6th Cir. 2006). Like the Title VII amendments at issue in *Landgraf*, 511 U.S. at 269-70, the ADA Amendments Act, if applied retroactively, "attaches new legal consequences to events completed before its enactment." *Id.* at 270 (internal citations omitted). As discussed, Congress broadened the class of plaintiffs who could bring a cause of action under the "regarded as" prong, and retroactive application would therefore "increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280.

Although Congress may have intended to restore the interpretation of the ADA to that which it originally desired, there is still a genuinely retroactive effect in this case.

The Supreme Court's "construction of [the] statute is an authoritative statement of what the statute meant before as well as after [*Sutton*]." *Rivers*, 511 U.S. at 312-13. Congress can only retroactively overturn that interpretation when "its intent to reach conduct preceding the 'corrective' amendment . . . clearly appear[s]." *Id.* at 313. Otherwise, *Sutton* "provides the baseline" for our retroactivity analysis, *id.*, and a comparison of the ADA as interpreted in *Sutton* with the ADA as amended shows that the ADA Amendments Act has a genuinely retroactive effect if applied.

Application of these principles compels the conclusion that the ADA Amendments Act does not apply to pre-amendment conduct. Other courts that have addressed the issue have similarly held that the ADA Amendments Act does not apply retroactively. *See, e.g.*, *EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Caronia v. Hustedt Chevrolet*, No. 05-3526, 2009 WL 909729, at *8 (E.D.N.Y. Apr. 1, 2009); *Amorosi v. Molino*, No. 06-5524, 2009 WL 737338, at *4 n.7 (E.D. Pa. Mar. 19, 2009); *Supinski v. United Parcel Serv., Inc.*, No. 3:CV-06-0793, 2009 WL 113796, at *5 n. 6 (M.D. Pa. Jan. 16, 2009); *Rudolph v. U.S. Enrichment Corp.*, No. 5:08-CV-00046-TBR, 2009 WL 111737, at *6 (W.D. Ky. Jan. 15, 2009).

## III.

Under the prior version of the ADA, the facts do not support that the defendants regarded Milholland as disabled and there is not, therefore, a genuine issue for trial. To make a prima facie case of discrimination under the ADA, Milholland must first show that she is "a disabled person within the meaning of the Act." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). Milholland does not claim that her arthritis is itself a disability, but asserts that she is disabled within the meaning of the ADA because she was "regarded as" having an impairment under 42 U.S.C. § 12102(2)(C) (2006). Under this version of the statute, Milholland must show that she was "regarded as having . . . [an] impairment that substantially limits" her major life activity of working in a broad class of jobs. *Id.*; *Sutton*, 527 U.S. at 491.

The facts, construed in the light most favorable to Milholland under *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), support a

finding only that the defendants generally knew that Milholland was ill, but not that they regarded her as impaired. Bills first found out about Milholland's illness when Milholland's husband worked with Bills at the same school, prior to the time when Bills supervised Milholland. Thereafter, Bills inquired about Milholland's health at social events. During the March 13, 2006 meeting, Bills made a reference to Milholland's health in regard to transferring Milholland to a teaching position. As a result, Milholland sent Bills a letter discussing her illness and stating that she was healthy enough to continue to work as an administrator. After Milholland was informed of her transfer, she and her husband met with Bills on two occasions. In the first meeting, Bills stated that Milholland was transferred due to missing work, though Bills did not expressly attribute the absences to health issues. In the second meeting, Bills admitted that he had discussed Milholland's health during the March 13, 2006, meeting in regard to returning Milholland to a teaching position. These facts show only a general knowledge of health issues.

Furthermore, despite knowledge of Milholland's health issues, the evidence does not support a conclusion that the defendants thought that Milholland's abilities were impaired. Milholland never mentioned the specifics of her illness to the Board of Education. As Milholland states in her brief, Brown, her principal, "never got the impression that she could not do her job" because of her illness. Appellant's Br. at 8. On the contrary, despite an awareness to her ongoing illness, Brown assigned varying duties to Milholland that might be difficult for an individual with Milholland's illness: Milholland "mopped floors; cleaned bathrooms; painted the boys' restroom and served lunch in the cafeteria" while serving as an administrator. Milholland Dep., p. 62-63. Furthermore, Bills continued to employ Milholland as a teacher, employment that involved at least some duties similar to those of an administrator, "a fact which [militates] against a finding that [the defendants] regarded [her] as substantially limited in working," *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 600-01 (6th Cir. 2002). That the defendants were aware of Milholland's health issues does not support a conclusion that they misperceived Milholland's physical abilities as impaired and affecting her

performance.  *See McElroy v. Philips Med. Sys. N. Am., Inc.*, 127 F. App'x 161, 169 (6th Cir. 2005).

Even if the defendants harbored such ideas, there is no evidence that the defendants thought Milholland's impairment substantially limited her in her life activity of working in a broad class of jobs.  Milholland continues to be employed by the defendants as a teacher, which is in the same class of jobs as an administrator.  *See, e.g.*, *Temple v. Bd. of Educ. of the City of N.Y.*, 322 F. Supp. 2d 277, 281 (E.D.N.Y. 2004); *see also Swain v. Hillsborough County Sch. Bd.*, 146 F.3d 855, 858 (11th Cir. 1998).  Administrators and teachers are both educators with "similar training, knowledge, skills or abilities" and thus are in the same class under 29 C.F.R. § 1630.2(j)(3)(ii)(B).  Although being an administrator may require additional training and certifications, and require more organizational skill, these distinctions do not take the position out of the "broad class" of jobs that envelops all educators.  In *Sutton*, the Supreme Court considered both "global airline pilot" and "pilot instructor" to be within a broad class of jobs that included all pilots.  527 U.S. at 493 (citing 29 C.F.R pt. 1630, App. § 1630.2 (1998)).

Milholland was not precluded from working in a broad class of jobs simply because Bills did not give her the administrator job she desires.  *See id.* at 492.  Even if Milholland was regarded as having an impairment that limited working as an administrator, "the inability to perform a single, particular job does not constitute a substantial limitation" on her life activity of working.  *Moorer v. Baptist Mem. Health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).  Additionally, it is of no consequence that Milholland was also turned down for two other administrative jobs.  Milholland was still not "precluded from more than one *type* of job," *Sutton*, 527 U.S. at 492 (emphasis added), because she is employed in a classroom position.  That Milholland was not given the job that may best utilize her "unique talents," *id.*, does not aid her claim.  Where "jobs utilizing an individual's skills . . . are available, one is not precluded from a substantial class of jobs."  *Id.*

There is accordingly no genuine issue of material fact as to an essential element of Milholland's claim, and summary judgment in favor of the defendants was appropriate.  The judgment of the district court is affirmed.