[Cite as *Moscato v. Ohio State Univ.*, 2013-Ohio-3631.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ELAINE MOSCATO

      Plaintiff

      v.

THE OHIO STATE UNIVERSITY, et al.

      Defendants

Case No. 2011-06552

Magistrate Anderson M. Renick

DECISION OF THE MAGISTRATE

{¶ 1} Plaintiff brought this action alleging claims of both age and disability discrimination, and violation of her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. 2611 et seq. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.[1]

{¶ 2} In August 2002, plaintiff began her employment as a teacher at the Nisonger Center at The Ohio State University (OSU). The Nisonger Center's Early Childhood Education program (ECE) serves students with developmental disabilities. In January 2010, Sara Thiessen (nka Sara Thomson) became plaintiff's supervisor when she was appointed as Interim Coordinator at the Nisonger Center. Prior to her appointment, Thiessen had worked as a teacher at the Nisonger Center.

{¶ 3} In the summer of 2010[2], plaintiff was diagnosed with a thyroid condition and her treating physician recommended surgical removal of the organ. Plaintiff testified that she delayed the surgery so that she could teach during the first two weeks of the school year while her new students adjusted to school. The thyroid surgery was performed on September 14, and plaintiff returned to work on September 24, earlier

---

[1]Plaintiff's February 7, 2013 motion to file a surreply is GRANTED.

than her doctor had recommended.  Plaintiff's physician subsequently informed her that a biopsy showed evidence of cancer and that additional medical care was necessary, including blood tests and radiation treatment.

{¶ 4} On or about October 10, plaintiff informed Thiessen of the cancer diagnosis and she notified Thiessen that she would need time off for occasional medical appointments, including an extended absence in December to receive radiation treatments.  Both plaintiff and Thiessen acknowledged that Thiessen was responsible for scheduling substitute teachers.  Michael Moscato, plaintiff's husband, testified that he communicated with Kim Oyer, the human resources (HR) representative for the Nisonger Center, regarding plaintiff's medical treatment and sick leave required to attend medical appointments. (Plaintiff's Exhibit 10.)  Plaintiff testified that her physician scheduled periodic appointments to conduct blood tests and that, on occasion, Thiessen questioned the need for such appointments and inquired whether they were "an emergency."  On October 18, after plaintiff responded that her medical treatment was indeed an emergency, Thiessen sought advice from Maureen Meck, an HR administrator, regarding plaintiff's requests for leave.  Thiessen informed Meck that she didn't "know what to do with this situation."  (Plaintiff's Exhibit 21.)  Meck advised Thiessen that she "should allow [plaintiff] to go" and that Thiessen should "develop a policy and procedure for emergencies."  (Plaintiff's Exhibit 22.)

{¶ 5} On October 21, Thiessen informed Oyer that plaintiff had talked to certain coworkers "in a negative way" and that plaintiff had "threatened to file a complaint" against her.  (Plaintiff's Exhibit 23.)  On October 29, Thiessen issued two written reprimands and placed plaintiff on a performance improvement plan (PIP).  According to documents related to the first reprimand, plaintiff had engaged in "discourteous treatment of ECE property and children" by being "rough" with a wagon and "grabbing" and "pulling" children by their arms. (Defendants' Exhibit H.)  Specifically, Thiessen

---

[2]Unless otherwise stated, all dates referenced herein shall refer to 2010.

stated that she had observed plaintiff lift a child by holding both of the child's hands up over the child's head.  In the second written reprimand, Thiessen states that plaintiff exhibited mistreatment towards coworkers, such as yelling on occasion and commenting to a paraprofessional, "I can change diapers faster than you." (Defendants' Exhibit I.)  Both reprimands noted that "continued neglect of duty may result in progressive corrective action up to and including termination."  On November 1, plaintiff wrote a response to the reprimands in which she denied both mistreating coworkers and "grabbing" a child.  (Plaintiff's Exhibit 11.)  Plaintiff's response included a letter from Rachel Kemper, RN, an employee of defendants' James Cancer Hospital, who requested that the decision to reprimand plaintiff for yelling be reconsidered based upon her opinion that as a complication of plaintiff's thyroid (throat) surgery, plaintiff had "difficulty controlling the tone and volume of her voice."  Thiessen wrote a reply to Kemper's request for reconsideration wherein she stated that the reprimand was prompted not only by yelling and tone of voice, but also by plaintiff's attitude and body language.  According to Thiessen, there had "been a pattern of this type of behavior for the past 9 months." (Plaintiff's Exhibit 11, page 434.)  In the PIP, Thiessen noted that another incident of discourteous treatment of children would result in immediate termination.

{¶ 6} On November 17, Marc Tasse, Ph.D., Director of the Nisonger Center, presented plaintiff with a letter notifying her that she had been placed on administrative leave "pending a fact-finding investigation" as a result of being observed on November 10, "mishandling a child in her care." (Plaintiff's Exhibit 11.)  According to an email from Janine Oden-Thomas, an OSU HR consultant, a decision to terminate plaintiff's employment had been made by 9:18 a.m. on November 17.  (Plaintiff's Exhibit 38, page 15.)  On November 29, Dr. Tasse signed a letter notifying plaintiff that her employment had been terminated, wherein he noted the issues addressed in the written reprimands and PIP, including mistreatment of a paraprofessional, supervisor, and discourteous treatment of property and children.  (Plaintiff's Exhibit 8.)

**DISABILITY DISCRIMINATION**

**A. Reasonable accommodation**

{¶ 7} Plaintiff alleges that defendants denied her "a reasonable accommodation" of leave to attend her medical appointments, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. 12112 et seq. and Ohio's anti-discrimination statute, R.C. 4112. "Courts are to conduct an individualized inquiry and under appropriate circumstances, a medical leave of absence can constitute a reasonable accommodation." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782-83 (6th Cir. 1998). Federal and state disability discrimination claims are subject to the same evidentiary standards and may be evaluated concurrently. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010).

{¶ 8} The ADA defines "reasonable accommodation" to include:

{¶ 9} "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

{¶ 10} "(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. 12111(9); *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 868 (6th Cir. Ohio 2007).

{¶ 11} Unlike claims based upon an adverse employment action, claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination. Therefore, if the court accepts the employee's version of the facts, no inference is required to conclude that the employee has discriminated against plaintiff. *Kleiber*, *supra* at 868. To succeed on her disability discrimination claim, plaintiff must show the following: (1) that she was

disabled; (2) that defendant was aware of the disability; and (3) that she was an otherwise qualified individual with a disability in that she satisfied the prerequisites for the position and could perform the essential functions of the job with or without accommodation. *Pflanz v. Cincinnati* (2002), 149 Ohio App.3d 743, 2002-Ohio-5492, ¶ 13; *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011). Ohio's statute is modeled after the ADA, and Ohio courts will "look to the ADA and its interpretation by federal courts for guidance in interpreting the Ohio statute." *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573, 1998-Ohio-410.

{¶ 12} The ADA defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. 12112(b)(5)(A). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. 12102(1).

{¶ 13} It is undisputed that plaintiff suffered from cancer and that she experienced physical limitations as a result of the disease and her thyroid surgery. Plaintiff testified that she experienced difficulty regulating the tone and volume of her voice and that as a result of her cancer and medical treatment, she experienced symptoms including extreme fatigue, emotional swings, and constant pain from an aggravation of her preexisting fibromyalgia condition. Plaintiff testified that, beginning at the time of her surgery, she required help from her teaching assistant to perform physically demanding aspects of her job, including lifting children.

{¶ 14} Defendants contend that plaintiff failed to prove that she suffered a disability under the ADA. In order to establish a claim for disability discrimination, the plaintiff must first establish that she is "disabled" within the meaning of the ADA. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). The Americans With Disabilities Act Amendments Act of 2008 (ADAAA) applies in cases where the alleged discriminatory acts occurred after January 1, 2009. *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 566-67 (6th Cir. 2009).

{¶ 15} Under the ADAAA, "disability" means:

{¶ 16} "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

{¶ 17} "(B) a record of such an impairment; or

{¶ 18} "(C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. 12102(1).

{¶ 19} "In contrast to the pre-amendment statute, under the ADAAA, a plaintiff proceeding under the 'regarded as' prong only has to prove the existence of an impairment to be covered under the Act; she no longer is required to prove that the employer regarded her impairment as substantially limiting a major life activity." *Wells v. Cincinnati Children's Hospital Medical* Center, 860 F.Supp.2d 469, 478 (S.D.Ohio, WD, 2012). A physical impairment includes "[a]ny physiological disorder or condition, * * * or anatomical loss affecting one or more body systems, such as * * * respiratory (including speech organs)," immune or lymphatic. *Id.*, 29 C.F.R. 1630.2(h). Furthermore, the Tenth District Court of Appeals has recently observed that "chronic conditions that cause periodic flare-ups 'may constitute a disability if [the flare-ups] occur with sufficient frequency and are of sufficient duration and severity to substantially limit a major life activity.'" *Camp v. Star Leasing Co.*, 10th Dist. No. 11AP-977, 2012-Ohio-3650, ¶ 57, quoting *Brown v. BKW Drywall Supply, Inc.*, 305 F.Supp.2d 814, 826-27 (S.D.Ohio 2004).

{¶ 20} The question of whether an individual has a disability under this part "should not demand extensive analysis." ADAAA Section 2(b)(5). There is no question that plaintiff's surgery and cancer treatment negatively impacted her overall physical and emotional condition, including her difficulty speaking and pain from flare-ups of her chronic fibromyalgia. Moreover, defendants have acknowledged that Scott Prenger, M.D., a physician who examined plaintiff, determined that plaintiff had a "permanently

disabling" condition as of September 2010, the month plaintiff's thyroid surgery was performed. (Defendants' Exhibit AA.) Based upon the evidence presented, the court finds that plaintiff has proven by a preponderance of the evidence that her condition, including the impact of the required medical treatment, substantially limited her in the major life activity of working.

{¶ 21} Defendants next contend that plaintiff failed to prove that she was qualified to perform her job duties at the time in question. However, "the qualification prong turns on the objective qualities of the [employee], not a subjective belief on the part of the employer that the work product was deficient." *Gaglioti v. Levin Group, Inc.,* 6th Cir. No. 11-3744, LEXIS 25625 (Dec. 13, 2012). The standard for determining whether an employee is qualified for a position is whether the plaintiff "present[s] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir. 2003).

{¶ 22} Oyer acknowledged that, as of August 20, 2010, after approximately eight years of employment, plaintiff did "not have any complaints in her personnel file." (Plaintiff's Exhibit 3.) Indeed, on September 20, just weeks before her job was terminated, Dr. Tasse informed plaintiff that she had received a raise in her salary based, in part, on "individual performance relative to last year's objectives and leadership competencies." (Plaintiff's Exhibit 7.) Thus, the court finds that plaintiff was qualified for the purposes of her discrimination claim.

{¶ 23} There is no dispute that defendants knew of plaintiff's need for medical treatment and that plaintiff requested time off for medical appointments, including radiation treatment that was scheduled for December. Therefore, the question becomes whether defendants failed to make reasonable accommodations for her disability. Plaintiff contends that OSU failed to engage in a meaningful dialogue with her to determine the best means of accommodating her disability.

{¶ 24} "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009), citing *Taylor v. Principal Fin. Grp.,* 93 F.3d 155, 165 (5th Cir. 1996). "[T]he duty of an employer to make reasonable accommodations also mandates that the employer interact with an employee in a good faith effort to seek a reasonable accommodation." *Shaver v. Wolske & Blue*, 138 Ohio App.3d 653, 664 (2000). The employer must engage in an "in-teractive process," which includes "a meaningful dialogue with the employee to find the best means of accommodating [the] disability." *Id.*, quoting *Tobin v. Liberty Mut. Ins. Co.,* 433 F.3d 100, 108 (1st Cir. 2005). "When an employer does not engage in a good faith interactive process, that employer violates the ADA-including when the employer discharges the employee instead of considering the requested accommodations." *Id.*, citing *Cutrera v. Bd. of Supervisors of La. St. Univ.,* 429 F.3d 108, 113 (5th Cir. 2005). "An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." *Cutrera* at 113.

{¶ 25} Although plaintiff contends that defendants never engaged in a meaningful dialogue with her regarding an accommodation for her medical appointments, it is undisputed that plaintiff was granted leave for every medical appointment that occurred during her employment with defendants. There were instances when Thiessen asked plaintiff whether her request for leave was "an emergency," or otherwise inquired about the nature of the medical appointments; however, Thiessen ultimately granted plaintiff's leave requests. Accordingly, the court finds that plaintiff cannot prevail on her claim that defendants failed to accommodate her disability.

**B. Adverse employment action (termination)**

{¶ 26} Plaintiff's remaining discrimination claims [disability and age], which are based upon being subjected to an adverse employment action, are analyzed through the burden-shifting framework established in *McDonnell Douglas Corp. v. Green, 411 U.S. 792* (1973). Plaintiff must put forward a prima facie case of discrimination under the relevant statute. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St. 3d 578, 1996-Ohio-265. Plaintiff can establish a prima facie case for disability discrimination by showing: (1) that she was disabled; (2) that an adverse employment action was taken at least in part because of the disability; and (3) that she could safely and substantially perform the essential functions of the job despite her disability. *Turner v. Shahed Enters.,* 10th Dist. No. 10AP-892, 2011-Ohio-4654, ¶ 13.

{¶ 27} As stated above, plaintiff has proved that she was disabled and that she substantially performed the essential functions of her teaching job. Much of the evidence presented by plaintiff focused on the temporal proximity between plaintiff's disability and defendants' disciplinary actions which led to the termination of her employment. Most notably, soon after Thiessen and Oyer learned that plaintiff had the thyroid surgery which led to her cancer diagnosis, Thiessen requested assistance in documenting problems with plaintiff's interactions with others so that those incidents could be used in considering plaintiff's future employment. On September 8, Thiessen asked Oyer whether she should "just keep track of all these complaints" concerning plaintiff "so that when it comes time to ask teachers to come back the following school year, we can take these complaints into consideration when we are making our decision on who we want/don't want to return?" (Plaintiff's Exhibit 20.) Oyer replied that teachers were "regular employees" and that Thiessen did not have "an option to decide if they come back next year or not." *Id.* However, Oyer advised Thiessen that she would need to go through "the proper process to replace a non-producing employee through coaching and PIP process which you are starting with [plaintiff] this year beginning with her P-3 goals you are developing now." Oyer further advised Thiessen

to add a requirement in plaintiff's P-3 evaluation that plaintiff "'receive no more than 2 complaints a year,' this way you already have one." *Id.*

{¶ 28} Although Thiessen understood that plaintiff was being treated for cancer and that she would be required to attend numerous medial appointments prior to undergoing radiation therapy in December, neither Thiessen nor the assigned HR specialist (Oyer) met with plaintiff either to discuss her medical condition and offer assistance or to plan for required medical leave. Rather, the evidence shows that Thiessen expressed concern about how to handle plaintiff's medical leave and Thiessen inquired on at least two occasions whether plaintiff's appointments were emergencies. On October 18, plaintiff responded to one such inquiry from Thiessen and informed her that the appointment to determine her cancer "level" was an emergency, whereupon Thiessen contacted Meck for HR support and exclaimed "I don't know what to do with this situation because I know she's going through a difficult time." (Plaintiff's Exhibit 21.) Three days later, on October 21, Thiessen expressed concern to Oyer that plaintiff was "talking to [several coworkers] in a very negative way" and that plaintiff had "threatened to file a complaint" against Thiessen. (Plaintiff's Exhibit 23.) On October 27, Thiessen again notified Oyer of concerns regarding the way plaintiff spoke in front of coworkers. (Plaintiff's Exhibit 24.) Oyer suggested that "[w]e can approach it by saying that several co-workers have complained about the way she is speaking to them and that we will no longer tolerate it and will write her up each time there is a complaint." *Id.* On the same date, Thiessen informed the HR department that she observed plaintiff lift a child by the child's arms and that she intended to confer with Oyer "to see if [Thiessen] can write [plaintiff] up for this action." *Id.* Thiessen subsequently gave plaintiff two written reprimands.

{¶ 29} Based upon the evidence, the court finds that plaintiff has established that the termination of her employment was taken, at least in part, because of her disability and that she has established a prima facie case of disability discrimination.

{¶ 30} Once a plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate legitimate, non-discriminatory reasons for the challenged action. *Mauzy,* at 1276. If the employer articulates such non-discriminatory reasons, the burden shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 12. To meet her burden, plaintiff must submit evidence that an employer's proffered reason (1) had no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Id.*, citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Under any of the three options, a plaintiff must produce sufficient evidence from which the court could reasonably reject defendant's explanation and infer that defendant intentionally discriminated against her. *Knepper* at ¶ 12, citing *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003); *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012).

{¶ 31} Defendants maintain that plaintiff's "lengthy history of poor performance" was a legitimate, non-discriminatory reason for the decision to terminate her employment. According to defendants, Thiessen issued the written reprimands to plaintiff after it became apparent that plaintiff's "bad behavior" was escalating rather than improving. Defendants also contend that they had no choice but to terminate plaintiff's employment after she failed her PIP by improperly lifting a child.

{¶ 32} Upon review of the testimony and evidence, the court finds that defendants have articulated legitimate reasons for their actions. Therefore, the burden shifts back to plaintiff to prove by a preponderance of the evidence that defendants' stated justification was mere pretext for impermissible discrimination. *Boyd v. Ohio Dept. of Mental Health*, 10th Dist. No. 10AP-906, 2011-Ohio-3596, ¶ 27.

{¶ 33} Although defendants argue that plaintiff had a lengthy history of poor performance, as stated above, Oyer related that, during plaintiff's eight years of

employment with defendants prior to her cancer diagnosis, she had performed her teaching duties without receiving any formal complaints in her personnel file. Defendants reference incidents that were not memorialized in plaintiff's personnel file which they argue are indicative of plaintiff's poor performance; however, the only reason stated in the letter which placed plaintiff on administrative leave pending a "fact-finding investigation" was being "witnessed mishandling [of] a child."

{¶ 34} Dr. Tasse testified that he did not participate in any fact-finding investigation and that he believed HR was responsible for conducting the investigation. Oyer testified that she was not involved in an investigation, though "it would have been nice to be included." Oyer believed that either "central HR" or OSU Medical Center's HR department would conduct an investigation. Oden-Thomas testified that it was "standard" to conduct a fact-finding investigation when placing an employee on administrative leave; however, she did not know who was in charge in this case. Oden-Thomas further testified that an HR representative, such as Oyer, should have had a discussion with plaintiff regarding whether her medical condition impacted her performance. The court notes that there is no evidence of any such conversation regarding plaintiff's medical condition and treatment, or how the disease and treatment might impact plaintiff's work performance and temperament.

{¶ 35} Moreover, even if the court was persuaded that any fact-finding investigation occurred, the evidence established that such investigation did not include an interview of either plaintiff or any other witnesses. As noted above, an email from Janine Oden-Thomas indicates that the decision to terminate plaintiff's employment had been "approved' by 9:18 a.m. on November 17, the morning that plaintiff was placed on administrative leave. Furthermore, those who were involved in the decision to terminate plaintiff's employment were generally unaware of any prior incidents of plaintiff's "poor performance."

{¶ 36} The decision makers were also unaware of certain information which was both known to Thiessen and Oyer and would have been relevant to a fact-finding investigation, but was not disclosed to Dr. Tasse or other employees who were involved in the decision to fire plaintiff.  Most significantly, Dr. Tasse and other employees who participated in the decision-making process testified that they were not aware that Thiessen had informed Oyer that plaintiff had threatened to file a complaint against her before Thiessen issued the written reprimands and the PIP.  Dr. Tasse was also unaware that plaintiff had accused Thiessen of not understanding her medical condition "basically implying that [she had] no sympathy."  (Plaintiff's Exhibit 31.)  Oyer testified that she was aware of several complaints regarding Thiessen's questions about plaintiff's medical leave, but Oyer did not recall whether she met with plaintiff to discuss those concerns.  Thiessen also failed to inform those who were involved in the administrative action that plaintiff had submitted an FMLA request.

{¶ 37} The evidence showed that Thiessen was the only witness to the two "improper lifting" incidents which were the stated basis for placing plaintiff on administrative leave.  Thiessen testified that she witnessed the first incident on October 27, several days after plaintiff was asked to confirm that her medical appointments were "emergencies."  On the same date, Thiessen recorded her observations of plaintiff's teaching performance, recording comments on plaintiff's body language and enthusiasm; however no mention was made of improper lifting of a child.  Thiessen observed the second incident on November 10, five days after plaintiff submitted her FMLA request for intermittent medical leave.  (Plaintiff's Exhibit 35.)

{¶ 38} Initially, Thiessen did not report the incident in writing.  After plaintiff was placed on administrative leave, Thiessen was instructed to prepare a written report, wherein she stated that she observed plaintiff "begin" to lift the child out of a wagon.  Thiessen testified that during the second incident, she observed plaintiff lifting the child's left arm, and that she did not recall what happened after the arm was lifted.  Although Thiessen testified that she was concerned for the child's safety, she did not

intervene at the time of either incident, nor did she speak to plaintiff about her November 10 observation until plaintiff had been placed on administrative leave.

{¶ 39} In contrast to Thiessen's differing versions of the November 10 incident, plaintiff adamantly denied lifting a child by the arms on either occasion. Plaintiff also testified that she was certain the male student who Thiessen believed had been lifted from the wagon on November 10 was never in the wagon that day inasmuch as he seldom rode in the wagon, and two girls who were present that day required the use of the wagon. The court finds that Thiessen's testimony regarding the November 10 incident was not credible and inconsistent with her earlier versions of the event.

{¶ 40} Furthermore, "[a]n employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1167 (6th Cir. 1996). Inconsistent reasons given by key decision-makers as to the reason for the firing can provide evidence of pretext. *Tinker v. Sears, Roebuck & Co.,* 127 F.3d 519, 523 (6th Cir. 1997).

{¶ 41} Although Thiessen and Dr. Tasse testified about concerns with plaintiff's performance, defendants' HR staff who reviewed and processed the approval of the termination believed the sole reason for the action was the incident involving lifting the child. As stated above, mishandling of a child was the sole reason stated for placing plaintiff on administrative leave. (Plaintiff's Exhibit 4.) Furthermore, affidavits filed in a related Equal Employment Opportunity Commission action do not refer to any poor performance exhibited by plaintiff prior to the time of the incidents that were addressed in the written reprimands. (Plaintiff's Exhibit 29.) Inasmuch as plaintiff had no complaints in her personnel file prior to her illness, the court finds defendants' contention that plaintiff had a long history of poor performance which justified the termination of her employment is not supported by the evidence. Moreover, plaintiff's testimony that her cancer diagnosis and treatment caused significant changes in her emotional and physical condition was credible and compelling. There is no doubt that

plaintiff's medical condition had a negative impact on her work performance and it is likely that some of the performance concerns noted by Thiessen in the weeks following plaintiff's thyroid surgery, such as plaintiff's temperament and the vocal difficulties addressed in Nurse Kemper's letter, were related to plaintiff's battle against cancer.

{¶ 42} Based upon the evidence, the court is persuaded by a preponderance of the evidence that neither improper lifting of a child nor "poor performance" actually motivated the decisions to place plaintiff on administrative leave and terminate her employment, but were a pretext for discrimination. Accordingly, the court finds that plaintiff has proved her claim of disability discrimination.


**FMLA**

{¶ 43} The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. 2615(a). Two distinct theories of recovery arise under these statutes. *See Arban v. W. Publ. Corp.*, 345 F.3d 390, 400-401 (6th Cir. 2003) (explaining the entitlement and retaliation theories of recovery under the FMLA). The employer's intent is not a relevant part of the entitlement inquiry under 2615. *Arban,* at 401 "Under the retaliation theory (also known as the discrimination theory), in contrast, the employer's motive is an integral part of the analysis. *See Hodges* [*v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998)] (explaining that in retaliation cases, 'the employer's motive is relevant, and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason'). The employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights. *See Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 885 (7th Cir. 2005) (observing that the retaliation theory applies where a company seeks to punish an employee 'for exercising rights or opposing an unlawful procedure')." *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. Mich. 2006).

{¶ 44} The court applies the burden-shifting test articulated in *McDonnell Douglas*, *supra*, to retaliation claims under the FMLA. *Id.*; *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001) (applying the burden-shifting analysis to an FMLA-retaliation suit). Plaintiff can make out a prima facie case of discrimination by showing that (1) she availed herself of a protected right under the FMLA by notifying defendant of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Id.*; *Skrjanc* at 314. If plaintiff satisfies these three requirements, the burden shifts to defendant to proffer a legitimate, nondiscriminatory rationale for discharging the employee. *Skrjanc* at 315.

{¶ 45} The parties have stipulated that plaintiff completed the FMLA form that she obtained from defendants' HR department and that plaintiff's physician, Ravi Dhawale, M.D., certified the leave request on November 5. (Plaintiff's Exhibit 35.) Thiessen testified that she was aware that plaintiff was submitting an FMLA request and she acknowledged that she received a copy of the request in her mailbox. Oyer acknowledged that the FMLA request was "an OSU record." Based upon the evidence, the court finds that plaintiff exercised rights afforded by the FMLA and that she was discharged from her employment; however, the parties disagree on whether there was a causal connection between her exercise of rights and the adverse employment action.

{¶ 46} The court may look to the temporal proximity between the adverse action and the protected activity to determine whether there is a causal connection. *Harrison v. Metro Govt. of Nashville & Davidson Cty., Tenn.*, 80 F.3d 1107, 1118-1119 (C.A.6, 1996). "'The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.'" *Id.*, quoting *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Sixth Circuit Court of Appeals has held that closeness in time is

only one indicator of a causal connection and that temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. Ohio 2010); *Skrjanc* at 317. However, when combined with other evidence of retaliatory conduct, temporal proximity is enough to establish a causal connection. *Id.*

{¶ 47} It is undisputed that plaintiff informed defendants that she would require intermittent medical leave, including an extended period of time in December for radiation treatment. Plaintiff testified that she would typically submit medical leave requests by completing the required documents and submitting them to Thiessen. Plaintiff signed the FMLA documents on November 2, and the medical certification was signed on November 5. Inasmuch as plaintiff was placed on administrative leave on November 17 and the decision to terminate her employment was made on or before that morning, the court finds that the close temporal proximity between the FMLA request and the termination supports an inference of causation.

{¶ 48} Thiessen testified that she received plaintiff's completed FMLA forms, but that she did not take any action on the request because she believed that Oyer was aware of the request and was working with plaintiff to process the documents. Thiessen conceded that she did not provide any information regarding the FMLA request to anyone involved in the administrative leave fact-finding investigation. Defendants' HR personnel testified that such information should have been disclosed during the fact-finding process. The court finds that the failure to consider plaintiff's FMLA request, or to provide that information during the fact-finding investigation, combined with temporal proximity, is sufficient evidence of causality to establish a prima facie case for her FMLA claim.

{¶ 49} Thiessen was responsible for obtaining teachers to substitute for plaintiff while she was on medical leave and the evidence shows that by mid-October, coordinating plaintiff's time off for medical treatment had become a burden for Thiessen. When Thiessen sought guidance from Meck and confided that she didn't "know what to

do with this situation" regarding plaintiff's intermittent medical leave, Meck advised Thiessen to grant the leave requests and "develop a policy and procedure for emergencies." (Plaintiff's Exhibit 22.) During cross-examination, Thiessen admitted that she did not develop such a policy before plaintiff was terminated. Furthermore, as discussed above, neither Thiessen nor Oyer engaged in a meaningful discussion with plaintiff regarding either the impact of her medical condition or a plan for her intermittent medical treatment. For the foregoing reasons, the court finds that defendants' stated justification for the disciplinary action against plaintiff was mere pretext and not the true reason for the decisions to ignore her FMLA request and terminate her employment. Accordingly, the court finds that plaintiff has proved that defendants violated her rights under the FMLA.

**AGE DISCRIMINATION**

{¶ 50} Plaintiff's claim of age discrimination may be proven either by direct evidence of discrimination or through the burden-shifting analysis set forth in *McDonnell Douglas*, *supra*. Plaintiff has not presented direct evidence of age discrimination. Under either the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. 623(a)(1) or R.C. 4112.02(A), to make out a prima facie case of age discrimination, where no direct evidence is available, plaintiff must demonstrate that she: "(1) was a member of the statutorily protected class, i.e., was at least 40 years old at the time of the discrimination, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 11, citing *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, at paragraph one of the syllabus.

{¶ 51} The court has found that plaintiff was qualified for the position and there is no dispute that plaintiff was over the age of 40, and that she was discharged. Thiessen

testified that defendants hired a teacher who was under 30 years of age and that the teacher subsequently took over plaintiff's position.  Therefore, the court finds that plaintiff has presented sufficient evidence to meet her modest burden of proving a prima face case of age discrimination.

{¶ 52} However, an employer cannot be liable for age discrimination "whenever its reason for firing an employee over the age of 40 is improper *in any respect*." (Emphasis in original) *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 612 (1993), citing *McDonnell Douglas*, *supra*.  "For example, it cannot be true that an employer who fires an older black worker because the worker is black thereby violates the ADEA.  The employee's race is an improper reason, but it is improper under Title VII, not the ADEA." *Id.*

{¶ 53} Although plaintiff argues that defendants had a practice of replacing older teachers with substantially younger teachers, Thiessen testified that many of the former teachers had either retired or resigned their position and that she interviewed prospective teachers who were over 40 years of age.  The court notes that defendants' records show that plaintiff was the only employee Thiessen supervised who had her position involuntarily terminated.  (Plaintiff's Exhibit 33.)  Based upon the evidence, the court finds that the actions which led to the termination of plaintiff's employment were related to her health conditions and the resulting medical treatment.  In short, the court finds that plaintiff has failed to prove that defendants' decision to terminate her employment was motivated by her age.

{¶ 54} For the foregoing reasons, judgment is recommended in favor of plaintiff on her claims of disability discrimination and violation of her rights under the FMLA.

{¶ 55} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of*

*any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

cc:

Emily M. Simmons                              Gilbert J. Gradisar
Eric A. Walker                                501 South High Street
Assistant Attorneys General                   Columbus, Ohio 43215
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

James A. Meaney
7507 Ravens Nest Court
Columbus, Ohio 43235

004
Filed March 27, 2013
To S.C. Reporter August 22, 2013